UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHARLES MARC MITCHELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 4:10-CV-819 (CEJ) |
| | ) |
| JOSH SHEARRER, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, alleging constitutional violations in connection with his arrest and detention.  Before the Court is the motion of defendant Matthew Richardet to dismiss the complaint or, in the alternative, for summary judgment.  Plaintiff opposes the motion, and the issues have been fully briefed.

**I.  Background**

On October 21, 2009, plaintiff was arrested by officers of the Farmington, Missouri police department.  He was brought to the St. Francois County jail where he was issued citations for municipal ordinance violations.  The arresting officer handed the citations to the jailers---one of whom was Richardet--- and turned plaintiff over to them for processing.  The citations contained plaintiff's name, date of birth, and Social Security number.

The booking process involved obtaining information from arrestees, such as name, birth date, Social Security number, height, weight, and medical history.  It was the policy of the St. Francois County jail not to allow detainees to use the telephone until after they were fully processed.  Individuals who were arrested without a warrant

were held in custody until they secured bail or for a maximum of twenty-four hours.

During the booking process, plaintiff was asked to provide his Social Security number. According to Richardet, it is preferable to obtain the Social Security number directly from the detainee because there is a risk of error in relying on such information when it is provided by someone other than the detainee. Plaintiff responded to the request by telling the jailers that "it was none of their business." [Doc. No. 49-4, p. 53]. Plaintiff testified that he refused to provide the information because he was angry about being arrested. Because plaintiff was uncooperative, Richardet ceased efforts to process him and placed him in a holding cell near the processing desk. Richardet testified that uncooperative detainees are put in a cell to "cool down," and when they are ready to cooperate the jailers "pull them back out" and finish the booking process. [Doc. 49-8, p. 19].

Before plaintiff was placed in the cell, he was searched and his long-sleeved shirt was removed. Plaintiff was still wearing a t-shirt, pants and socks. Plaintiff had been brought to the jail without shoes.

Plaintiff was able to see the processing desk by looking through the window of his cell. After being in the cell for 10 or 15 minutes, plaintiff made his first request to use the telephone. He testified that he intended to call his girlfriend. After the request, a female jailer came to plaintiff's cell and taped black paper over the window. Plaintiff made repeated requests to use the telephone, but he could not see who, if anyone, was at the processing desk. According to his affidavit and deposition testimony, Richardet was not at the processing desk or in the vicinity of the holding cells at all times during plaintiff's detention, because he was attending to other duties at the jail. Also, there was a point during plaintiff's detention when Richardet's shift

ended and he was not on duty. Richardet testified that he never heard plaintiff's requests to use the phone. He acknowledged, however, it would have been possible for someone at the processing desk to hear if a detainee called from the holding cell.

At some point, plaintiff complained of being cold and yelled, "Turn the heat on or bring my shirt." [Doc. No. 52-5, p. 59]. Through a speaker, plaintiff heard someone say, "We'll get the heat." Id. Plaintiff testified that it then "got warmer and it was better." Id.

At 7:45 p.m. the next day, Richardet released plaintiff after completing the booking paperwork. Plaintiff requested shoes and was told by Richardet that there were no shoes that could be given to him. Richardet also directed plaintiff to a pay phone in the jail's lobby. Plaintiff testified that he had no money and he did not attempt to make a collect call. Plaintiff testified that he had to walk fifteen minutes in the rain to get to his home. Although he was wearing only socks, he sustained no injuries to his feet.

II.     Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986);

Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists.  United of Omaha Life Ins. Co. v. Honea, 458 F.3d 788, 791 (8th Cir. 2006) (quoting Fed. R. Civ. P. 56(e)). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).

### III.   Section 1983 and Qualified Immunity

Section 1983 of Title 42 of the United States Code provides in relevant part:

> Every person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

42 U.S.C. § 1983.  Section 1983 is "not itself a source of substantive rights," but merely affords "a method for vindicating federal rights elsewhere conferred."  Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144 n. 3 (1979)).  Accordingly, a court considering a § 1983 claim must first "identify the specific constitutional right allegedly infringed."  Id. at 271 (citing Graham v. Connor, 490 U.S. 386, 394 (1989)).  Moreover, § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights."  Mayorga v. Missouri, 442 F.3d 1128, 1132 (8th Cir. 2006) (quotation omitted).

Government employees who perform discretionary functions may assert qualified immunity from civil liability under § 1983. Anderson v. Creighton, 483 U.S. 635, 638 (1987). At the summary judgment phase:

> To determine whether an official is entitled to qualified immunity we engage in a two-part analysis. The "threshold question" is whether, taking the facts in the light most favorable to the injured party, the alleged facts demonstrate that the official's conduct violated a constitutional right." Id. If a violation could be made out on a favorable view of the parties' alleged facts, the next step is to ask whether the right was clearly established. Id. "To determine whether a right is clearly established we ask whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id.

White v. McKinley, 519 F.3d 806, 813 (8th Cir. 2008) (quoting Clemmons v. Armontrout, 477 F.3d 962, 965 (8th Cir. 2007)).

A court may find that an alleged violation was not "clearly established" without determining whether a constitutional violation occurred where the latter inquiry would not assist in clarifying the constitutional standards that govern official conduct. Pearson v. Callahan, 555 U.S. 223, 236-42 (discussing factors courts should consider in making this determination). Whether or not qualified immunity applies is question of law. See Gainor v. Rogers, 973 F.2d 1379, 1382-83 (8th Cir. 1992).

### A. Denial of Requests to Use Telephone

Plaintiff claims that Richardet's denial of his requests to use a telephone violated plaintiff's rights to free speech and to petition the government (Counts VI and VII), his right to be free from unreasonable searches and seizures (Count VIII), his right to counsel (Counts IX and X), and his right to due process (Counts XII and XIII). The undisputed evidence is that Richardet was not in the booking area or even in the building for the entire time that plaintiff was in the holding cell. Richardet testified that he never heard plaintiff ask to use the phone. Moreover, plaintiff does not state that

he spoke directly to Richardet and he presents no evidence from which it could be inferred that any of his requests were actually heard by Richardet.  When questioned about his ability to hear and see through his cell window, plaintiff testified as follows:

> Q.  Are you able to hear people talking outside through it?
>
> A.  There really wasn't anyone out there to talk.  You could see the desk I had been at, you could see the faces of both of the workers over that tall counter if they sat.
>
> Q.  Was it soundproof:
>
> A.  I would not say so, no.
>
> Q.  You were able to hear them and they were able to hear you talking from your cell?
>
> A.  If they would ever say anything, I could hear them.  They didn't say much.

[Doc. 49-4, pp. 56-57].

The plaintiff's testimony establishes that at some point there were two "workers" at the processing desk and at other times there were none.  Further, plaintiff testified that after he made his first request to use the phone, it was the female jailer- - -not Richardet- - -who responded by covering the cell window.  After that was done, plaintiff could not see anyone in the booking area.  Thus, plaintiff cannot establish that Richardet was present when he made his subsequent requests to use the phone. Absent proof of Richardet's personal involvement in the denial of his requests, plaintiff's claim against Richardet fails.

Even if plaintiff could prove that Richardet heard his first request and deliberately ignored it, Richardet would be entitled to qualified immunity.  The law was not clearly established that a denial of access to a telephone under circumstances similar to those in this case constituted deprivation of a detainee's constitutional rights.

By his own account, plaintiff had been in the cell for only 10 or 15 minutes before he made his initial request to use the telephone. The two cases cited by plaintiff in support of his claims both involved detainees who were denied access to a telephone for much longer periods of time. Gallagher v. City of Winlock, Wash., 287 Fed. Appx. 568, 577 (9th Cir. 2008) ("Although, at the time if the events in question here, the constitutional right to telephone access--in general--was recognized . . ., the contours or that right were gauge enough that a reasonable officer would not have been on notice that the denial of phone calls for two and a half hours . . . would violate plaintiffs' constitutional rights."); Valdez v. Rosenbaum, 302 F.3d 1039 (9th Cir. 2002) (no due process deprivation when detainee placed on telephone restriction for four and a half months).

The Fourth Amendment's prohibition against unreasonable searches and seizures has no application in the context of a denial of access to a telephone. Also, plaintiff's testimony that he intended to call his girlfriend belies his claim that denial of phone access violated his Sixth Amendment right to counsel.

In Count XII, plaintiff claims that Richardet's actions deprived him of a liberty interest created by Mo. Rev. Stat. § 544.170. A state statute must contain "'substantive predicates' to govern official decision making" and "explicitly mandatory language" requiring a particular outcome if the substantive predicates have been met in order to create a liberty interest protected by due process. Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 462-63 (1989).

Section 544.170 provides that an individual arrested without a warrant and who has not been formally charged must be released from custody within twenty-four hours of the arrest. The statute further provides:

> 2.  In any confinement to which the provisions of this section apply, the confinee shall be permitted at any reasonable time to consult with counsel or other persons acting on the confinee's behalf.
>
> 3.  Any person who violates the provisions of this section, by refusing to release any person who is entitled to release pursuant to this section, or by refusing to permit a confinee to consult with counsel or other persons, or who transfers any such confinees to the custody or control of another, or to another place, or who falsely charges such person, with intent to avoid the provisions of this section, is guilty of a class A misdemeanor.

Mo. Rev. Stat. § 544.170 (2011).

The qualification that a detainee be allowed to consult with others at "reasonable" times imparts discretion to the officials to whom the statute applies. As such, the statute does not create a liberty interest. See Valdez v. Rosenbaum, 302 F.3d 1039, 1045 (9th Cir. 2002) (no liberty interest created by state statute entitling detainee "reasonable access" to telephone); Town of Castle Rock, Colo. v. Gonzales, 545 U.S. 748, 756 (2005) ("Our cases recognize that a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." Id.).

In Count XIII, plaintiff claims that the denial of access to a telephone deprived him of a liberty interest created by Missouri Supreme Court Rule 37.13. The rule provides:

> Every person arrested and held in custody by any peace officer in any detention facility, police station, or any other place, upon or without a warrant or other process for the alleged commission of an ordinance violation, or upon suspicion thereof, shall promptly, upon request, be permitted to consult with counsel or other persons and, for such purpose, to use a telephone.

Mo. Sup. Ct. Rule 37.13 (2008).

Rule 37.13 has been interpreted to apply only when a detainee requests to use a phone for the explicit purpose of consulting an attorney. State v. Foster, 959 S.W.2d 143, 146 (Mo. App. Ct. 1998). Plaintiff has not submitted any evidence that he

indicated that he wished to use the phone to call an attorney. Indeed, he testified that he wanted to call his girlfriend. Because plaintiff cannot show that he made a request to which Rule 37.13 applied, it is unnecessary to determine whether Rule 37.13 creates a liberty interest.

The Court concludes that plaintiff's claims based on the denial of his requests to use the telephone are insufficient as a matter of law. Richardet is therefore entitled to summary judgment on the claims asserted against him in Counts VI, VII, VIII, IX, X, XII, and XIII.

### B.  Due Process, Fourth Amendment and Eighth Amendment Claims

In Counts XI and XIV, plaintiff alleges that the conditions of his detention imposed by Richardet violated his rights as guaranteed by the Fourth, Fifth, Eighth and Fourteenth Amendments. Because of plaintiff's status as a pretrial detainee, it is substantive due process, not the Fourth, Fifth, or Eighth Amendment, that governs the conditions of his detention. See Morris v. Zefferi, 601 F.3d 805, 809 (8th Cir. 2010) ("Because [plaintiff] was a pretrial detainee at the time of the alleged violation of his constitutional rights, we analyze [plaintiff's] claim against [defendant] under the Fourteenth Amendment, rather than the Eighth Amendment.").

"Under the Fourteenth Amendment, a pretrial detainee's constitutional rights are violated if the detainee's conditions of confinement amount to punishment." Id. (citing Bell, 441 U.S. at 535). Further, "pretrial detainees are entitled to 'at least as great' protection [under the Fourteenth Amendment] as that afforded convicted prisoners under the Eighth Amendment." Id. (quoting Owens v. Scott County Jail, 328 F.3d 1026, 1027 (8th Cir. 2003)). The Eighth Circuit has "previously suggested that the

burden of showing a constitutional violation is lighter for a pretrial detainee under the Fourteenth Amendment than for a post-conviction prisoner under the Eighth Amendment." Id. (quoting Wever v. Lincoln County, Neb., 388 F.3d 601, 606 n. 6 (8th Cir. 2004) (citing Smith v. Copeland, 87 F.3d 265, 268 n. 4 (8th Cir. 1996)).

"In considering whether the conditions of pretrial detention are unconstitutionally punitive, we review the totality of the circumstances of a pretrial detainee's confinement" Id. (citing Smith, 87 F.3d at 268 ("[A]ny analysis of confinement conditions must be based on the totality of the circumstances." (internal citations omitted)). As the Supreme Court explained in Bell v. Wolfish,

> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal-if it is arbitrary or purposeless-a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.

Bell, 441 U.S. at 538-39 (internal citations omitted). "Although [the Eighth Circuit] has yet to establish a clear standard for pretrial detainees, we repeatedly have applied the same 'deliberate indifference' standard as is applied to Eighth Amendment claims made by convicted inmates." Vaughn v. Greene County, Ark., 438 F.3d 845, 850 (8th Cir. 2006); see also Morris, 601 F.3d at 809.

1. Count XI

The claim asserted by plaintiff in Count XI is that Richardet failed to provide him with adequate clothing and footwear.  This claim pertains to the removal of plaintiff's long-sleeved shirt and the denial of his request for shoes.   At the time of the events giving rise to this lawsuit, the law was clearly established that

> the governmental duty to protect . . . is not based on a pretrial detainee's right to be free from punishment but is grounded in principles of safety and general well-being: "when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs--*e.g.,* food, clothing, shelter, medical care, and reasonable safety-- it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause."

Butler v. Fletcher, 465 F.3d 340, 344-45 (8th Cir. 2006) (quoting DeShaney v. Winnebago County Dept. of Soc. Serv., 489 U.S. 189, 200 (1989)).

Clearly, state officials have a duty was fulfilled to provide adequate clothing for individuals who are in custody.  Plaintiff's testimony belies his claim that this duty was not met.  Plaintiff was clothed in a short-sleeved shirt, pants and socks while in the cell.  When he complained of being cold, the heat in the cell was increased and "it got warmer and it was better."  Plaintiff has not shown that the clothing he was allowed to wear in the cell was inadequate.

Plaintiff does not contend that he was denied adequate footwear while he was in the jail.  Rather, he complains that he was not given shoes upon being released from the jail.  Plaintiff was no longer in custody when he asked to be provided footwear. The law was not clearly established that jailers have a duty to provide clothing or footwear to pretrial detainees who have been released.  The Court finds that Richardet is entitled to qualified immunity on this claim.

   2.  **Count XIV**

As to Count XIV, the Court finds that plaintiff has submitted evidence which, given all reasonable inferences, could establish that Richardet engaged in conduct that was punitive or deliberately indifferent and resulted in an unnecessary extension of plaintiff's detention.

Plaintiff was placed in a cell because he refused to provide his Social Security number.  According to Richardet, uncooperative detainees are put in a cell to "cool down," and are removed when they become cooperative.  At that point, the booking process is completed.  There is no evidence that Richardet attempted to determine whether plaintiff had cooled down and was willing to cooperate.  As a result, plaintiff was not allowed to post a bond and was held in custody for twenty-three hours.  A jury could find that find that plaintiff's detention was unnecessarily lengthened because he was not given the opportunity to cooperate with the booking process after "cooling down."

Further, there is evidence that Richardet had control over the length of plaintiff's detention, as it was Richardet who ultimately released plaintiff from jail.  Also, there is evidence that Richardet obtained plaintiff's Social Security number from another source and that plaintiff's refusal to provide this information did not did not prevent Richardet from confirming his identity and did not impede the booking process.  Cf. Smith, 87 F.3d 265 (justification for conditions must also explain the length of time plaintiff was subject to those conditions).  Given the circumstances presented here, a jury could find that Richardet's failure to release plaintiff sooner was intended as punishment or constituted deliberate indifference.

Further, Richardet is not entitled to qualified immunity.  A reasonable officer would have known that conduct that unnecessarily delays a pretrial detainee's release

could constitute a violation of the Fourth Amendment.  See Gerstein v. Pugh, 420 U.S. 103 (1975) (Fourth Amendment entitles person arrested without a warrant to a probable cause determination as prerequisite to extended detention after arrest); Wayland v. City of Springdale, Ark., 933 F.2d 668, 670 (8th Cir. 1991) (when delay exceeds the time necessary to process the arrest and is no longer reasonable, Fourth Amendment requires that the detainee be released).  See also County of Riverside v. McLaughlin, 500 U.S. 44, 56 (1991) ( "Examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake."); Johnson v. Board of Police Com'rs, 370 F.Supp.2d 892, 903 (E.D. Mo. 2005) (plaintiffs detained for fourteen to twenty-four hours without a warrant or intention to obtain a warrant stated a claim for violation of Fourth Amendment).

It is true that Missouri law provides that a pretrial detainee cannot be held longer than twenty-four hours without a warrant.  See MO. REV. STAT. § 544.170.[1]  But Section 544.170 "does not provide any authority to arrest persons without a warrant and hold them in custody for twenty[-four][2] hours."  United States v. Oropesa, 316 F.3d 762, 769 (8th Cir. 2003).  "Such a procedure is unconstitutional."  Johnson, 370 F.Supp.2d 892, 903 (E.D. Mo. 2005); United States v. Roberts, 928 F.Supp. 910,

---

[1] The statute provides:  "[A]ll persons arrested and confined in any jail or other place of confinement by any peace officer, without warrant or other process, … shall be discharged from said custody within twenty-four hours from the time of such arrest, unless they shall be charged with a criminal offense … and be held by warrant to answer to such offense."  MO. REV. STAT. § 544.170 (1) (2011).  Further, "[i]n any confinement to which the provisions of this section apply, the confinee shall be permitted at any reasonable time to consult with counsel or other persons acting on the confinee's behalf."  MO. REV. STAT. § 544.170 (2) (2011) .

[2] MO. REV. STAT. § 544.170 (1) was amended in 2005, increasing the mandatory time period during which a probable cause determination must be made from 20 to 24-hours.  See Mo. Legis. H.B. 353 (2005).

932-33 (W.D. Mo.1996) ("This statute [MO. REV. STAT. § 544.170] is not a sword in the hands of the police, but rather a shield for the citizen."). As such, the Missouri 24-hour hold statute does not negate plaintiff's claim that his detention was unreasonable.

Richardet argues that similar lengths of pretrial detention due to delays in the booking process have been found constitutional and that plaintiff's detention does not shock the conscience. For example, in Luckes v. County of Hennepin, Minn., 415 F.3d 936, 938 (8th Cir. 2005), the plaintiff was arrested pursuant to a valid bench warrant for failing to pay traffic fines and was subjected to processing delays that extended his detention so that he was held for twenty-four hours. It was held that this delay did not violate the detainee's right to substantive due process. Similarly, in Lund v. Hennepin County, 427 F.3d 1123 (8th Cir. 2005), a twelve-hour delay in releasing a detainee following a bail hearing was held not a violation. The cases cited by Richardet are not persuasive. The Fourth Amendment, not due process, provides the proper standard for reviewing whether the length of plaintiff's warrantless detention amounted to a constitutional violation. See Johnson, 370 F.Supp.2d at 902; Golberg, 417 F.3d 808. Additionally, plaintiff's claims against Richardet do not rest on this distinction. It is not the length of detention that determines whether a constitutional violation has occurred, it is whether the detention was unjustifiably prolonged. See Young v. City of Little Rock, 249 F.3d 730, 734-36 (8th Cir. 2001) (30 minute unjustified delay in releasing plaintiff found to violate due process). In contrast to Luckes and Lund, Richardet has not submitted evidence showing that the delay in releasing plaintiff was due to circumstances beyond his control or was justified by legitimate governmental interests. Thus, even under the substantive due process standard, the Court finds that plaintiff has submitted evidence that Richardet acted with deliberate indifference and

unjustifiably prolonged plaintiff's detention. Bell, 441 U.S. at 538-39 ("if a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment."); Dodds v. Richardson, 614 F.3d 1185 (10th Cir. 2010) ("[p]laintiff had a liberty interest based upon federal law in being freed from detention once bail had been set and that his continued detention despite that liberty interest must be reasonably related to a legitimate goal to pass constitutional muster.").

Finally, in Count XIV plaintiff also claims that his Eighth Amendment right to be free from excessive bail was infringed by Richardet's refusal to allow him to contact someone and post bail. The Eighth Amendment does not guarantee a detainee the right to post bail, it requires that bail not be excessive if set. See Young v. County of Cook, 616 F.Supp.2d 834, 854 (N.D. Ill. 2009) (citing Bell, 441 U.S. at 535 n. 16). Plaintiff does not contend that his bail was excessive. As discussed above, plaintiff's challenge to the length of his pretrial detention is governed by the Fourth Amendment and due process. As such, Richardet is entitled to summary judgment on plaintiff's Eighth Amendment claim in Count XIV.

### 3. Count XV

In Count XV, plaintiff alleges that Richardet physically assaulted him and carried out acts of "malicious physical abuse," in violation of his right to due process. Plaintiff has testified that he was not physically abused at any time during his detention and has also admitted the same in his statement of material facts. (Doc. Nos. 49-1 at para. 24; 49-3; and 49-4). Thus, Richardet is entitled to summary judgment as to Count XV.

### III.   Conclusion

For the reasons discussed above, Richardet is entitled to summary judgment on the plaintiff's claims in Counts VI, VII, VIII, IX, X, XI, XII, XIII, and XV.  He is not entitled to summary judgment on the substantive due process and Fourth Amendment claims asserted against him in Count XIV that relate to the length of the plaintiff's detention.

Accordingly,

**IT IS HEREBY ORDERED** that the motion of defendant Matthew Richardet to dismiss or for summary judgment  [Doc. # 33] is **granted** as to the claims in Counts VI, VII, VIII, IX, X, XI, XII, XIII, and XV only.   A judgment in favor of the defendant with respect to these claims will be entered following disposition of the remaining claims in this case.

**IT IS FURTHER ORDERED** that the defendant's motion **denied** with respect to the substantive due process and Fourth Amendment claims asserted in Count XIV that relate to the length of the plaintiff's detention.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 19th day of March, 2012.