UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CHARLES MARC MITCHELL, | ) |
| Plaintiff, | ) |
| vs. | ) No. 4:10-CV-819 (CEJ) |
| JOSH SHEARRER, et al., | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, alleging constitutional violations in connection with his arrest. Before the Court is the joint motion of defendants Josh Shearrer, Eric Spiker, and Clifton Bone for summary judgment. Plaintiff opposes the defendants' motion, and the issues have been fully briefed.

I.  Background

Defendants Shearrer, Spiker, and Bone were, at all relevant times, police officers employed by the City of Farmington, Missouri. On October 21, 2009, Shearrer responded to a complaint by one of plaintiff's neighbors that plaintiff had blown leaves and grass clippings into the street while mowing his front lawn. In effect at that time was a Farmington municipal ordinance that prohibits discharging debris into a public street. See FARMINGTON, MO., MUNICIPAL CODE § 210.750 (2011).[1]

---

[1] "Every person who shall cast or track into or upon or allow to run into or upon any street, alley, public place or sidewalk, or into any lot or premises of another, any mud, dirt or debris shall be deemed guilty of an ordinance violation." FARMINGTON, MO., MUNICIPAL CODE § 210.750 (2011), available at http://codes.sullivanpublications.com/farmington-slp/

Shearrer arrived at plaintiff's house at 7:45 p.m. and knocked on the front door. Plaintiff opened the door, but remained inside his house. Shearrer, who was in uniform, told plaintiff that he was there because of the lawn debris complaint. Plaintiff admitted that he had mowed his lawn earlier that evening. Shearrer asked plaintiff for identification. Plaintiff provided his name and date of birth, but refused to provide photo identification. During the course of the conversation, Shearrer asked plaintiff several times to step outside the house to talk. Shearrer testified that he wanted plaintiff to come outside "[f]or officer safety." [Doc. No. 49-6, p. 29]. Shearrer testified that he feared for his safety because plaintiff had refused to identify himself and because he "seemed to have an attitude" and "seemed agitated and upset, mad." [Doc. No. 49-7, p. 32]. Plaintiff refused to come outside and told Shearrer that he was tired and was going to sleep soon. Because plaintiff was uncooperative, Shearrer called for additional officers to respond to the location.

When Shearrer again asked plaintiff to come outside, plaintiff refused and stated that he was going to shut the door and go to sleep. Plaintiff then attempted to close the door, but Shearrer blocked it by placing his foot in the doorway. Shearrer testified that he made the decision at that point to arrest plaintiff for failure to comply with a lawful order.[2] According to Shearrer, the "lawful order" was the request for identification. [Doc. No. 49-7, p. 40]. Shearrer did not tell plaintiff at that time that he was under arrest.

---

[2]"It shall be unlawful for any person to willfully and knowingly obstruct, resist, oppose or fail to obey a lawful command of any Police Officer or public official of the City . . ." FARMINGTON, MO., MUNICIPAL CODE § 210.135 (2011), available at http://codes.sullivanpublications.com/farmington-slp/

With his foot preventing plaintiff from shutting the door, Shearrer again told plaintiff to come outside. Shearrer then pushed the door open with his left hand while grabbing plaintiff's left arm with his right hand. It was at this point that Shearrer informed plaintiff that he was under arrest. Shearrer attempted to pull plaintiff outside and plaintiff resisted by bracing his body against the door jamb. A brief struggle ensued during which Shearrer was attempting to remove plaintiff from his doorway by pulling on his arm and plaintiff was attempting to retreat into his house. Shearrer testified that he told plaintiff several times that he was under arrest and to stop struggling. While Shearrer and plaintiff were still struggling, defendants Spiker and Bone arrived on the scene. Shearrer, with the assistance of Spiker, was then able to pull plaintiff out of the doorway and handcuff him.

Plaintiff was taken to the Farmington Police Department and was issued citations for dispersing debris into a public street or sewer, refusing the lawful command of a police officer, and resisting arrest. Shearrer next drove plaintiff to the St. Francois County jail where he was turned over to the jailer, defendant Matthew Richardet. Shearrer then left to respond to another call.

II.     Discussion

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of

showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists.  United of Omaha Life Ins. Co. v. Honea, 458 F.3d 788, 791 (8th Cir. 2006) (quoting Fed. R. Civ. P. 56(e)). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).

> Section 1983 of Title 42 of the United States Code provides in relevant part:
>
> Every person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

42 U.S.C. § 1983.  Section 1983 is "not itself a source of substantive rights," but merely affords "a method for vindicating federal rights elsewhere conferred."  Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144 n. 3 (1979)).  Accordingly, a court considering a § 1983 claim must first "identify the specific constitutional right allegedly infringed."  Id. at 271 (citing Graham v. Connor, 490 U.S. 386, 394 (1989)).  Moreover, § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights."  Mayorga v. Missouri, 442 F.3d 1128, 1132 (8th Cir. 2006) (quotation omitted).

Government employees who perform discretionary functions may assert qualified immunity from civil liability under § 1983. Anderson v. Creighton, 483 U.S. 635, 638 (1987). At the summary judgment phase:

> To determine whether an official is entitled to qualified immunity we engage in a two-part analysis. The "threshold question" is whether, taking the facts in the light most favorable to the injured party, the alleged facts demonstrate that the official's conduct violated a constitutional right." Id. If a violation could be made out on a favorable view of the parties' alleged facts, the next step is to ask whether the right was clearly established. Id. "To determine whether a right is clearly established we ask whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id.

White v. McKinley, 519 F.3d 806, 813 (8th Cir. 2008) (quoting Clemmons v. Armontrout, 477 F.3d 962, 965 (8th Cir. 2007)).

A court may find that an alleged violation was not "clearly established" without determining whether a constitutional violation occurred where the latter inquiry would not assist in clarifying the constitutional standards that govern official conduct. Pearson v. Callahan, 555 U.S. 223, 236-42 (discussing factors courts should consider in making this determination). Whether or not qualified immunity applies is question of law. See Gainor v. Rogers, 973 F.2d 1379, 1382-83 (8th Cir. 1992)

### A.  Claims Against Shearrer

#### Counts I through IV

In Counts I through IV of the amended complaint, plaintiff claims that Shearrer violated his First,[3] Fourth, and Fifth Amendment (substantive due process) rights during the course of the arrest.

---

[3]Plaintiff's First Amendment claim alleges that Shearrer's actions amounted to a repression of his right to free speech because Shearrer prevented plaintiff from expressing his lack of consent to the "knock and talk" encounter.

- 5 -

The Supreme Court has held that the Fourth Amendment, not substantive due process, governs unlawful search and seizures. See Graham v. Connor, 490 U.S. 386, 394-95 (1989) (Because the "physically intrusive governmental conduct" alleged by plaintiff arose "in the context of an arrest or investigatory stop," his claims are analyzed under the Fourth Amendment instead of "the more generalized notion of substantive due process." (internal citations omitted)).  Similarly, it is the Fourth Amendment, not the First Amendment, that protects a person's right to withdraw his consent to a warrantless knock and talk encounter with a law enforcement officer.  As such, Shearrer is entitled to summary on the First Amendment and due process claims asserted in Counts I through IV.  See Pearson v. Callahan, 555 U.S. 223 (2009).

Plaintiff also alleges in Counts I through IV that Shearrer violated the Fourth Amendment by conducting a warrantless home arrest without probable cause or exigent circumstances.  The Fourth Amendment prohibits unreasonable search or seizure. U.S. CONST. amend. IV.  However, "it does not violate the Fourth Amendment merely to knock on a door without probable cause." United States v. Spotted Elk, 548 F.3d 641, 655 (8th Cir. 2008) (citing United States v. Cruz–Mendez, 467 F.3d 1260, 1264 (10th Cir. 2006) ("As commonly understood, a 'knock and talk' is a consensual encounter and therefore does not contravene the Fourth Amendment.").  No search or seizure occurs "when police officers who enter private property restrict their movements to those areas generally made accessible to visitors—such as driveways, walkways, or similar passageways." Id. (quoting United States v. Reed, 733 F.2d 492, 501 (8th Cir. 1984).  As with other consensual encounters, officers conducting a "knock and talk," "may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search his or her luggage—as long

- 6 -

as the police do not convey a message that compliance with their requests is required." United States v. Coney, 456 F.3d 850, 858 (8th Cir. 2006) (quoting Florida v. Bostick, 501 U.S. 429, 434 (1991)); see also United States v. Vera, 457 F.3d 831, 835 (8th Cir. 2006) ("A request to see identification is also not a seizure, 'as long as the police do not convey a message that compliance with their request[ ] is required.'") (quoting Bostick, 501 U.S. at 435).

Here, the encounter between Shearrer and plaintiff became coercive--and a seizure for Fourth Amendment purposes--when Shearrer placed his foot in plaintiff's door.  A jury could find that this clearly indicated to plaintiff that he could not no longer refuse Shearrer's commands to step outside and produce identification.  The question then becomes whether the seizure was unreasonable.

"Generally, the Fourth Amendment requires the police to obtain a warrant before entering a home." Smith v. Kansas City, Mo. Police Dep't, 586 F.3d 576, 580 (8th Cir. 2009) (quoting United States v. Spotted Elk, 548 F.3d 641, 651 (8th Cir. 2008)).  Law enforcement officers may enter a home without a warrant if the entry is supported by (1) consent, or (2) probable cause and exigent circumstances.  United States v. Poe, 462 F.3d 997, 999 (8th Cir. 2006).  The government bears the burden of establishing an exception to the warrant requirement.  United States v. Cisneros-Gutierrez, 598 F.3d 997 (8th Cir. 2010).

"In determining whether probable cause exists to make a warrantless arrest, a court will consider whether, based on the totality of the circumstances, the facts would justify a reasonably cautious police officer's belief that the individual arrested has committed or was committing an offense." Marksmeier v. Davie, 622 F.3d 896, 900 (8th Cir. 2010) (citation omitted).  Officers are entitled to qualified immunity "if they

arrest a suspect under the mistaken belief that they have probable cause to do so, provided that the mistake is objectively reasonable." Amrine v. Brooks, 522 F.3d 823, 832 (8th Cir. 2008). "In other words, we must determine whether [defendants] had 'arguable probable cause' to arrest the plaintiffs." Baribeau v. City of Minneapolis, 596 F.3d 465 (8th Cir. 2010).

"Exigent circumstances include threats to an individual's life, a suspect's imminent escape, the imminent destruction of evidence, or situations where there is a compelling need for official action and there is no time to secure a warrant." Smith v. Kansas City, Mo. Police Dep't, 586 F.3d 576, 580 (8th Cir. 2009) (internal quotation omitted). A warrantless home entry to arrest an individual suspected of committing a minor crime requires a greater showing of exigency than a warrantless home entry to arrest an individual suspected of a more serious crime. See Welsh v. Wisconsin, 466 U.S. 740, 753 (1984). An officer is entitled to qualified immunity as long as he or she had a reasonable, even if mistaken, belief that "exigent circumstances were present based upon the information [he or she] possessed at the time" of the warrantless entry. Rogers v. Carter, 133 F.3d 1114, 1119 (8th Cir. 1998).

It is evident that plaintiff was uncooperative and had an "attitude." But, those factors do not establish a threat of harm that would support exigent circumstances. Additionally, there is no evidence of escape or potential destruction of evidence. Shearrer argues that neither an arrest warrant nor the presence of exigent circumstances was required because plaintiff was in a public place and because he committed a criminal offense in Shearrer's presence.

The evidence establishes that plaintiff opened the door in response to Shearrer's knock and that he stood in the open doorway conversing with the officer. A

- 8 -

warrantless arrest in a public place does not violate the Fourth Amendment where probable cause exists. United States v. Watson, 423 U.S. 411 (1976). "The doorway of an individual's home . . . may be a public place for the purpose of making a warrantless arrest if the individual has come to stand in the doorway voluntarily." Duncan v. Storie, 869 F.2d 1100, 1102 (8th Cir. 1989). "However, an individual who is compelled to stand in a doorway cannot be lawfully arrested without the existence of probable cause and exigent circumstances." Id. (citations omitted). Here, plaintiff came to the doorway voluntarily, but when he attempted to end the encounter and close the door, Shearrer prevented him from doing so. At that point, plaintiff's presence was no longer voluntary, but was compelled, and the open doorway was no longer a public place. Thus, the seizure occurred inside plaintiff's home.

Further, Shearrer has not shown that there was probable cause for the plaintiff's arrest. Shearrer testified that plaintiff refused to obey a lawful command and thereby committed a crime in his presence. The command that plaintiff refused to obey was to produce identification. The plaintiff, however, was under no obligation to speak to the officer or to produce any identification documents:

> When law enforcement officers who are not armed with a warrant knock on a door, they do no more than any private citizen might do. And whether the person who knocks on the door and requests the opportunity to speak is a police officer or a private citizen, the occupant has no obligation to open the door or to speak. Cf. Florida v. Royer, 460 U.S. 491, 497-98 (1983). ("[H]e may decline to listen to the questions at all and may go on his way"). When the police knock on a door but the occupants choose not to respond or to speak, "the investigation will have reached a conspicuously low point," and the occupants "will have the kind of warning that even the most elaborate security system cannot provide." Chambers, 395 F3d. at 577 (Sutton, J., dissenting). And even if an occupant chooses to open the door and speak with the officers, the occupant need not allow the officers to enter the premises and may refuse to answer any questions at any time.

Kentucky v. King, 131 S. Ct. 1849, 1862 (2011).  An individual does not run afoul of the law by failing to comply with a police officer's directive to do something that he is not legally required to do.

Shearrer also argues that he is entitled to qualified immunity because any intrusion into plaintiff's home was *de minimis* and did not violate clearly established law.  This argument is also unpersuasive.  There is no *de minimis* exception when it comes to warrantless home arrests.  See Kyllo v. U.S., 533 U.S. 27 (2001) ("We have said that the Fourth Amendment draws 'a firm line at the entrance to the house,' . . . That line, we think, must be not only firm but also bright."  Id. at 40 (quoting Payton v. New York, 445 U.S. 573 (1980)).  Furthermore, the evidence that Shearrer prevented plaintiff from closing his front door and then forcibly removed plaintiff from his doorway is inconsistent with Shearrer's attempts to characterize his intrusion as a *de minimis* violation.  Cf. Smith v. Kansas City, Missouri Police Dep't, 586 F.3d 576 (8th Cir. 2009) (denying qualified immunity where an officer grabbed plaintiff's arm and pulled him outside of the house to arrest him).

At the time of the events in this case, the law was clearly established that the Fourth Amendment is violated when a police officer makes a warrantless arrest in a suspect's home without exigent circumstances and probable cause.  See Duncan, 869 F.2d 1100; Guite v. Wright, 147 F.3d 747 (8th Cir. 1998) ("It is clearly established that the Fourth Amendment prohibits a warrantless entry into a suspect's home to make a routine felony arrest absent consent or exigent circumstances"); Zitterkopf v. Hanks, 2010 WL 1287076 (D. Neb. 2010) ("It was clearly established in December 2006 that

officers could not arrest an individual in his own home absent a warrant or exception to the warrant requirement.").

For the reasons discussed above, the Court finds that Shearrer has failed to demonstrate that he is entitled to summary judgment on plaintiff's claims in Counts I through IV that are based on the Fourth Amendment.

### Count V

In Count V, plaintiff asserts a due process violation based on Shearrer's failure to advise plaintiff of his right to bond under Missouri Supreme Court Rule 37.17 ("Rule 37.17"). Plaintiff's constitutional right to due process is implicated by a violation of state law only if plaintiff can demonstrate the deprivation of state-created liberty interest without due process. See 42 U.S.C. § 1983 (prohibiting the violation of a *federal* right). In order for a state statute to confer a federally-protected interest, the statute must set forth: (1) "'substantive predicates' to govern official decision making" and (2) it must contain "explicitly mandatory language" mandating a particular outcome if the substantive predicates have been met. Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 462-63 (1989).

Rule 37.17 provides that, "[w]hen an arrest is made without a warrant, the peace officer *may* accept bond in accordance with a bail schedule furnished by the court having jurisdiction." Mo. Sup. Ct. R. 37.17 (emphasis added). In light of the discretionary language contained in Rule 31.17, the Court concludes that Rule 31.17 does not create any liberty interest of which plaintiff could have been deprived. As such, Shearrer is entitled to summary judgment as to Count V.

### Counts VI-XV

Shearrer is also named as a defendant in Counts VI through XV, which assert claims arising from plaintiff's detention at the St. Francois County jail. It is undisputed that Shearrer was not present during the events alleged in Counts VI through XV. The only allegation pertaining to Shearrer that finds any support in the evidence submitted by plaintiff is that Shearrer, "acting alone and acting together and in concert with" with Richardet, violated plaintiff's rights while he was detained at the St. Francois County jail. The Court will interpret this allegation as claim that Shearrer conspired with Richardet to violate plaintiff's constitutional rights. The Court finds, however, that plaintiff has not submitted evidence sufficient to support a claim for conspiracy under § 1983. To succeed on a conspiracy claim under 42 U.S.C. § 1983, "a plaintiff must show: (1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff." <u>White v. McKinley</u>, 519 F.3d 806, 814 (8th Cir. 2008). While plaintiff has submitted some evidence that Shearrer requested that Richardet take a photo of plaintiff and indicated that he would conduct further investigation into plaintiff's offenses, the Court finds these communications do not support a reasonable inference that there was an agreement between Shearrer and Richardet to engage in constitutionally prohibited conduct. Therefore, Shearrer is entitled to summary judgment on Counts VI through XV.

### B.  Claims Against Spiker and Bone

<u>Counts III and IV</u>

In Counts III and IV, plaintiff alleges that Spiker and Bone violated his Fourth Amendment rights by assisting Shearrer in the arrest. Plaintiff has alleged a direct violation of his Fourth Amendment rights, as well as liability based upon a failure to intervene in Shearrer's unconstitutional conduct.

The parties' deposition testimony establishes that Spiker and Bone arrived at plaintiff's house after Shearrer attempted to effect plaintiff's arrest. Shearrer and plaintiff were struggling in the doorway by this point. Thus, Spiker and Bone observed what appeared to be plaintiff resisting arrest. See Mo. Rev. Stat. § 575.150.[4] Resisting arrest is a criminal offense under Missouri law, even when the arrest is unlawful. See Mo. Rev. Stat. § 575.150.4.[5] There is no evidence that Spiker and Bone knew or should have known that Shearrer's arrest of plaintiff was unlawful. Thus, Spiker and Bone had probable cause to arrest plaintiff.

Plaintiff also argues that he was still inside his house for Fourth Amendment purposes when Spiker and Bone arrived and that exigent circumstances did not justify

---

[4]"A person commits the crime of resisting or interfering with arrest, detention, or stop if, knowing that a law enforcement officer is making an arrest, or attempting to lawfully detain or stop an individual or vehicle, or the person reasonably should know that a law enforcement officer is making an arrest or attempting to lawfully detain or lawfully stop an individual or vehicle, for the purpose of preventing the officer from effecting the arrest, stop or detention, the person: (1) Resists the arrest, stop or detention of such person by using or threatening the use of violence or physical force or by fleeing from such officer; or (2) Interferes with the arrest, stop or detention of another person by using or threatening the use of violence, physical force or physical interference." Mo. Rev. Stat. § 575.150(1).

[5]"It is no defense to a prosecution pursuant to subsection 1 of this section that the law enforcement officer was acting unlawfully in making the arrest. However, nothing in this section shall be construed to bar civil suits for unlawful arrest." Mo. Rev. Stat. § 575.150 (4).

a warrantless home arrest.  See Poe, 462 F.3d 997 (warrantless home arrest requires both probable cause and exigent circumstances).  Spiker and Bone had a reasonable basis for concluding that exigent circumstances--officer safety or "fresh pursuit"--justified whatever intrusion into plaintiff's home may have occurred in the course of placing plaintiff under arrest.  See United States v. Schmidt, 403 F.3d 1009, 1013 (8th Cir. 2005).  As such, the actions of Spiker and Bone did not violate the Fourth Amendment, regardless of whether the warrantless arrest occurred inside plaintiff's home or whether Shearrer's actions are found to be in violation of the Fourth Amendment.

The Court also finds that the evidence fails to support a constitutional claim against Bone and Spiker for failure to intervene.  A claim for failure to intervene under § 1983 requires evidence that a defendant had reasonable notice that a violation was occurring and the opportunity to intervene.  Putman v. Gerloff, 639 F.2d 415, 423 (8th Cir. 1981).  Because there is no evidence that Bone and Spiker had notice that Shearrer's conduct was in violation of the Fourth Amendment, they cannot be held liable for failing to intervene to prevent plaintiff's arrest.

The Court concludes that Spiker and Bone are entitled to judgment as a matter of law on the claims against them in Counts III and IV.

### Count V

Finally, Spiker and Bone are also named as defendants in Count V for depriving plaintiff of a state-created liberty interest without due process.  The Court finds that Spiker and Bone are entitled to summary judgment for the same reasons that entitle Shearrer to summary judgment on Count V.

\* \* \* \* \*

For the reasons discussed above,

**IT IS HEREBY ORDERED** that the motion of defendant Josh Shearrer for summary judgment [Doc. #43] is **granted** with respect to the plaintiffs claims based on the First and Fifth Amendments in Counts I through IV, and with respect to the claims in Counts V and VI through XV. The motion is **denied** with respect to plaintiff's claims against Shearrer based on the Fourth Amendment.

**IT IS FURTHER ORDERED** that the motion of defendants Clifton Bone and Eric Spiker for summary judgment [Doc. #43] is **granted**.

After disposition of the remaining claims in this case, judgment will be entered in favor of the defendants upon the claims for which they are entitled to summary judgment.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 20th day of March, 2012.